## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

**RANDY MARTIN,**

     **Plaintiff,**

**v.**                            **5:13-cv-00367-RS-EMT**

**CITY OF PANAMA CITY BEACH,**
**FLORIDA and JOHN KELLY,**
**individually,**

     **Defendants.**

_____/

## ORDER

Before me are the Motion for Summary Judgment of Defendants City of

Panama City Beach and John Kelly (Doc. 18), and Plaintiff's Response in

Opposition (Doc. 33).

## I. STANDARD OF REVIEW

The basic issue before the court on a motion for summary judgment is

"whether the evidence presents a sufficient disagreement to require submission to a

jury or whether it is so one-sided that one party must prevail as a matter of law."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S. Ct. 2505, 2512 , 91 L.

Ed. 2d 202 (1986).  The moving party has the burden of showing the absence of a

genuine issue as to any material fact, and in deciding whether the movant has met

this burden, the court must view the movant's evidence and all factual inferences

arising from it in the light most favorable to the nonmoving party.  *Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142 (1970); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).  Thus, if reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment. *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992) (citing *Mercantile Bank & Trust v. Fidelity & Deposit Co.*, 750 F.2d 838, 841 (11th Cir. 1985)).  However, a mere 'scintilla' of evidence supporting the nonmoving party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party. *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 251).

## II. BACKGROUND

I accept the facts in the light most favorable to Plaintiff.  *See Galvez v. Bruce*, 552 F.3d 1238, 1239 (11th Cir. 2008).  All reasonable doubts about the facts shall be resolved in favor of the non-movant.  *Id.*

On July 29, 2011, Randy Martin, the Plaintiff, was involved in an altercation with Jim Smith, a resident of the same neighborhood community. (Plaintiff's Statement of Disputed Material Facts, Doc. 32, p. 1-2).  Both Martin and Smith were injured in the altercation. (Doc. 32, p.2; Defendant's Statement of Facts, Doc. 20, p. 5). Martin maintains that Smith started the fight and that Martin only

minimally responded to Smith's attacks. (Doc. 32, p.1-2). Martin's assertions were later corroborated by a third-party witness. (Doc. 32, p. 24).  Martin further claims he would not have wanted to start any fight, since he was wearing a visible black medical boot due to Achilles tendonitis (Doc. 33, Plaintiff's Response, p. 1, 5).

Still, Smith called the police. Officer Kelly, the defendant, arrived to investigate. (Doc. 20, p. 1-2). Kelly interviewed Smith, who told Kelly that Randy Martin had just assaulted him with a billy club and threatened him with a holstered pistol.  (*Id.*) Smith also said that Martin lives just up the street, drives a blue Corvette, and was wearing a pink shirt and blue jeans and had a gun holster on his waist. (*Id.*).

Officer Kelly drove up the street to locate Martin. He arrived at a house with a blue Corvette parked outside. (*Id.*). He exited and saw a man, visibly wounded and disheveled, wearing a pink shirt and blue jeans. (*Id.*). Officer Kelly asked Martin to step outside the house, and then immediately placed him in handcuffs. (Doc. 32, p. 6).

Officer Kelly then searched Martin, and found the holster that Smith had described (Doc. 32 p. 8). Kelly then placed Martin in the backseat of his patrol car. (Doc. 20, p. 4). Kelly asked Martin whether he owned a billy club; he responded that he did, and Martin's wife located it in her car. (Doc. 32, p. 9-10). At no time did Kelly advise Martin of his Miranda rights (Doc. 32, p. 19).

Martin was tried for assault and battery in state court, and was acquitted on all charges (Doc. 20, p. 6). Martin filed a citizen complaint against Officer Kelly with the police department for his role in this incident, and Kelly was reprimanded and suspended. (Doc. 20, p. 7).

Martin later filed his complaint in state court alleging common law false arrest against both Officer Kelly and the City of Panama City Beach (Counts I and II); false arrest in violation of Fourth Amendment Rights under 42 U.S.C. § 1983 against Kelly and the City (Counts III and IV); malicious prosecution against Officer Kelly (Count V); and negligent retention and supervision against the City (Count VI). Defendants properly removed the case to this court.

Defendants have now moved for summary judgment on all counts.

### III. ANALYSIS

#### A. § 1983 Claim Against Officer Kelly

Since Martin's claims of constitutional violations under § 1983 form the basis of jurisdiction in this court, I address those claims first. Martin claims that Martin violated his right under the Fourth Amendment to be free from false arrest by arresting him without probable cause. Kelly submits that he is entitled to judgment as a matter of law because probable cause existed or, in the alternative, he is entitled to qualified immunity.

## *1. Probable Cause*

A warrantless arrest without probable cause violates the Constitution and forms the basis for a § 1983 claim. *Marx v. Gumbinner*, 905 F.2d 1503, 1505 (11th Cir. 1990). The existence of probable cause, however, is an absolute bar to a § 1983 claim for false arrest. *Id.* For probable cause to exist, the arrest must be objectively reasonable under the totality of the circumstances. *Bailey v. Bd. of Cnty. Comm'rs of Alachua Cnty., Fla.*, 956 F.2d 1112, 1119 (11th Cir. 1992). An officer has probable cause to arrest "if the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Von Stein v. Brescher*, 904 F.2d 572, 578 (11th Cir. 1990). The existence of probable cause is a matter of law to be decided by the judge where the facts are not in dispute. *Marx*, 905 F.2d at 1506.

Martin's argument is grounded in the claim that Officer Kelly failed to conduct a reasonable investigation prior to arresting him. An arresting officer must conduct a reasonable investigation to establish probable cause. Rankin v. Evans, 133 F.3d 1425, 1435 (11th Cir. 1998). However, the officer need not take every conceivable step to eliminate the possibility of arresting an innocent person or independently investigate every claim of innocence. *Id* at 1436.

## 2. *Qualified Immunity*

Intertwined with the question of probable cause is the issue of qualified immunity. *Von Stein*, 904 F.2d at 578. Qualified immunity is a shield against liability for government actors, prohibiting civil damages for torts committed while performing discretionary duties unless their conduct violates a clearly established statutory or constitutional right. *Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008). Qualified immunity allows government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). It is an immunity from suit rather than a mere defense to liability. *Mitchell v. Forsyth*, 472 U.S. 511, 512, 105 S. Ct. 2806, 2808, 86 L. Ed. 2d 411 (1985).

To receive qualified immunity, the defendant public official must prove as a threshold matter that he or she was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. *Courson v. McMillan,* 939 F.2d 1479 (11th Cir. 1991) (quoting *Rich v. Dollar,*841 F.2d 1558, 1563-64 (11th Cir. 1988)). Once this is established, the burden shifts to the plaintiff. *Id.* The court then engages in a two-step inquiry. *Hadley*, 526 F.3d at 1329. The first question is whether, taken in the light most favorable to the plaintiff, the facts alleged show that the defendants' conduct violated a constitutional or statutory

right. *Id.* If so, the second question is whether the right, be it constitutional or statutory, was clearly established. *Id.*

When assessing probable cause as part of a qualified immunity analysis, a lower standard—arguable probable cause—applies. *Skop v. City of Atlanta, GA*, 485 F.3d 1130, 1137 (11th Cir. 2007). Arguable probable cause asks whether a reasonable officer in the circumstances *could have believed* that probable cause existed. *Id.* This inquiry is another means of framing the "clearly established" prong of the qualified immunity test. *Poulakis v. Rogers*, 341 F. App'x 523, 526 (11th Cir. 2009).

### 3.  Officer Kelly's Conduct

It is not disputed that Kelly was acting within his discretionary authority when the allegedly wrongful acts occurred. Therefore, I must determine whether the Kelly violated a clearly established constitutional right.

I need not decide whether Kelly actually had probable cause to arrest Martin, only whether he had *arguable* probable cause to do so—in other words, whether Kelly could have reasonably believed that probable cause existed to make the arrest. Under the facts presented, taken in the light most favorable to the plaintiff, I find Kelly did have arguable probable cause to make the arrest and is thus entitled to qualified immunity.

Kelly, prior to making the arrest, took Smith's statement. Smith identified Martin by name, apparel, and vehicle, and stated that he was wounded. Kelly then proceeded to Martin's house and found a man matching that description who had obviously just been in a fight. Smith's complaint gave Kelly no reason to doubt his veracity or sincerity, and his testimony was immediately corroborated by Martin's appearance, as Martin had obviously just been involved in a fight. Kelly was entitled to rely on a victim's criminal complaint as support for a finding of probable cause. *Rankin v. Evans*, 133 F.3d 1425, 1441 (11th Cir. 1998); s*ee also Hendricks v. Sheriff, Collier Cnty., Florida*, 492 F. App'x 90, 93 (11th Cir. 2012). Kelly did not need to, as plaintiff suggests, locate and interview third party witnesses. Nor was he required to question that Martin could have committed the offense because he was wearing a medical boot; the photographic evidence shows that a reasonable officer could have believed that Martin was able to stand in the boot and could have battered someone while wearing it. (Doc. 31-4, p. 2).

Kelly's conduct during the arrest was not model police work; he was censured by the police department for his conduct. He was required to conduct a reasonable investigation prior to placing Martin in handcuffs, but the only information that Kelly had at the moment of the arrest—when he placed Martin into handcuffs—was Smith's complaint and description of Martin. Kelly did not interview Martin prior to his arrest and had not located or even made an effort to

search for either the pistol or the billy club before placing Martin in handcuffs immediately outside of his own home.

Kelly's hurried investigation may have fallen short of uncovering enough information that a prudent person would believe, at the time of arrest, that Martin committed battery. But that is not the inquiry when qualified immunity is raised as a defense. Rather, the inquiry is whether Officer Kelly *could have* reasonably believed that Martin committed battery, and it is clear that Kelly could have. He received Martin's name and description in the complaint of an individual whom he had no reason to believe was unreliable. Victim testimony may serve as the basis of probable cause, and that is sufficient to show that Kelly could have believed that he had probable cause to arrest Martin. Although it is clearly established law that Kelly was required to conduct a "reasonable investigation," it is not clearly established that Kelly was affirmatively required to do anything beyond taking the complaint of a seemingly credible witnesses and noticing circumstances corroborating those statements. Martin does not cite, nor does this court find, any authority to the contrary. No authority appears to make it objectively "apparent" that Officer Kelly's conduct violated a constitutional right.

Since Officer Kelly was entitled to qualified immunity, the claims against him under § 1983 must be dismissed.

## B. *City of Panama City Beach*

Martin also argues that the City of Panama City Beach, Kelly's employer, should be liable for his actions.

To impose § 1983 liability on a municipality, a plaintiff must show (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation. *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). A policy is a decision officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality. *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997). A custom is a practice that is so settled and permanent that it takes on the force of law. *Id.*

Once again, it is unnecessary to consider whether a constitutional violation actually occurred—that is, whether Officer Kelly had actual, not just arguable, probable cause to arrest Martin—because Martin has failed to show any custom or policy of the City that constituted deliberate indifference to his constitutional right. In fact, the record shows that City adequately trained and certified its officers (Doc. 21-4, p. 1), and had adequate policies regarding when to make warrantless arrests (Doc. 21-4, pp. 6-12).

Instead, Martin argues that this one instance of a constitutional violation must be evidence of a policy or custom of indifference to constitutional rights, including the failure to properly train its officers. But Martin has the burden of proving that the City's failure to train its officers constitutes a "deliberate indifference" to constitutional rights. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388, 109 S. Ct. 1197, 1204, 103 L. Ed. 2d 412 (1989). Martin has alleged no facts that demonstrate any fault at all on the part of the city which amount to any sort of deliberate indifference. Further, Martin must present evidence that the municipality knew of a need to train the officers and deliberately failed to take action. *See Gold v. City of Miami*, 151 F.3d 1346, 1350-51 (11th Cir. 1998). Martin has presented no such evidence. Rather, the record shows that Kelly had one prior complaint for false arrest, which the city disciplined according to its standard policies (Doc. 20, pp. 7-8). Allowing Kelly to remain in the field after that incident does not amount to a deliberate indifference to constitutional rights. Martin's arguments that the City ratified Kelly's conduct by insufficiently administering his discipline similarly fall short. Instead, the record shows that Kelly was disciplined and required to receive additional training. (Doc. 20, p. 7). It is of no consequence, as Martin argues, that Kelly has not yet received that training, nor that Kelly has insisted (apparently without official corroboration) that he can return to the field whenever he wants. (Doc. 33, p. 19).

Therefore, since Martin cannot show that the City had a custom or policy that constituted deliberate indifference to his constitutional right to be free from false arrest, his claim under § 1983 against the City must be dismissed.

### C.  State Law Claims

Jurisdiction of this case was predicated on Martin's § 1983 claims. Because both of those claims fail, I decline to exercise supplemental jurisdiction over the remaining claims. 28 U.S.C § 1367(c)(3). Those claims are remanded back to the state court in which Martin originally filed.

### IV. CONCLUSION

The relief requested in Defendants' Motion for Summary Judgment (Doc. 18) is **GRANTED** as to Counts III and IV, alleging violations of  42 U.S.C. § 1983, of Plaintiff's Complaint (Doc. 1-2). Those claims are **DISMISSED WITH PREJUDICE**. Because the federal question claims are dismissed, the Court declines to exercise its supplemental jurisdiction under 28 U.S.C. § 1367(c) over the remaining state law claims, which are **REMANDED** to state court. The Clerk is directed to close the case.


**ORDERED** on August 25, 2014.

/S/ Richard Smoak
**RICHARD SMOAK**
**UNITED STATES DISTRICT JUDGE**